BLITZESTAR NOVOTNY All rise. The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this Honorable Court. Good morning everyone. We have before us today a total of six cases. Three of them will be submitted today on the briefs without oral argument. They are namely Appeal No. 06-3046 Levinsky v. Department of Justice, Appeal No. 06-3241 Roach v. Department of Defense, and Appeal No. 06-3326 Warren v. Department of Army. On the three cases and arguments this morning, we'll hear first Appeal No. 06-1137 New Generation v. Sloan. Mr. Frischia, good morning. Good morning. Please proceed. May it please the Court, my name is Michael Frischia. I'm a law firm acquirer in English and I represent the appellant New Generation devices. This is an appeal from a dismissal by the New Jersey District Court for lack of personal jurisdiction. It will help us if you keep your voice up a little more. Certainly. This case is just like the Acro case. In the Acro case, in the Acro case there was an obligation on the part of the licensee to defend and enforce the patent. Here the licensees have no such obligation. So how is it just like Acro? Because there are agreements between the patent holder and residents in the state of New Jersey and there are continuing obligations between those parties because of those license agreements. But they don't involve enforcing or defending the patent. Well, they do to one extent in that the, but in Acro there were enforcement and defense obligations by contract. Here there is nothing of the sort. Yes, the obligations here comprise the requirement of any of the licensees to report any infringing activities to the licensor. The licensees are charged with monitoring it, with monitoring potential infringement and they have other obligations as well. All right, well if that's analogous to Acro then you win. If it's not analogous to Acro then presumably you don't. But what about the requirement that the intrusions of say into the state of New Jersey by the two spoken entities have to be related to the present lawsuit, an attack on patent validity and a request for a declaration of infringement against the plaintiff in that threat to the form of a patent infringement case? I'm not following you. Your lawsuit says this patent is invalid. Right. What Slocum has done in New Jersey is license its method and sell a product. How does the licensing or sale of the validity of the patent or whether your client's product or method infringes? Well in the first instance I think that there is a threat of infringement leveled at the plaintiff in that threat to the form of a lawsuit. But the court below didn't rule on lack of reasonable apprehension. The court below ruled that there was no personal jurisdiction because there was no relatedness between the subject matter of your lawsuit and the New Jersey based activities of either Slocum entity. So it seems to me that to win you have to prove that that's wrong. That they actually are related within the meaning of the case law. Well I think your honor that they are related to the extent that they stand that they relate to the same patents in suit. So the jurisdiction are covered by the patents in suit. The obligations relating to what the licensee has to do in New Jersey relate to the patents in suit. And you can sell the activities in New Jersey as so minor with respect to Slocum. Well I'm not sure they are minor and I don't think they are minor. I think they're continuous. The sales were minuscule percentage of their total sales. But I think they were continuous, systematic, and purposely directed to New Jersey. They have license agreements. Purposely directed to New Jersey or purposely directed to any state? Well New Jersey and other states certainly. But New Jersey as much as any other state in that they have license agreements. As little as any other state. Okay. Is an abusive discretion standard too? Whether you grant the character adjustment? I'm sort of switching a little bit here. In other words, even if there is jurisdiction, there's some discretion on the part of, even if there's jurisdiction in terms of the constitutional limits, the district judge has discretion to reject the D.J. action. Okay. But with respect to the idea of specific jurisdiction, I believe the judge erred. No, no. But I think Judge Lurie is getting you past jurisdiction. Saying even if there was jurisdiction in a constitutional sense, the district judge doesn't have to exercise it. The district judge has the right to decline to use of discretion. How could you reach that very deferential review standard? On the discretionary side. I'm not sure that the New Jersey judge articulated that sort of finding. Rather, the district judge said that there is no jurisdiction. Not that there was a declination to exercise it. You seem to be saying that if a patent owner does anything with respect to the forum state, that there's automatically jurisdiction for a declaratory judgment action attacking the validity of that patent. Because it's the same patent. And if that's true, then there would always be jurisdiction. It's always going to be the same. So the limits then become meaningless. And then the lack of connectedness or the lack of real presence in the forum by a particular D.J. defendant would never be remedial. Because the D.J. defendant would always have to where he doesn't want to be because it's always the same patent. So your view of the law makes it meaningless. It means there's no limit on what state any patent owner would be called into. That's totally against the whole thrust of the case law. I'm not proposing that at all. I'm proposing rather that that slogan has exercised a significant amount of business activity at New Jersey's property. As a matter of general jurisdiction? How do you defend as a general jurisdiction when the physical presence in the state is zero? No offices, no employees, no agents, no registered places of business, no license to do business, et cetera, et cetera. Absolute zero presence in the state of New Jersey. How can you say there's general jurisdiction when there's zero presence? Because their sales into New Jersey are not merely happenstance. They are purposeful. They have licenses with New Jersey entities. They direct advertisements to these New Jersey entities. They sell product directly to these New Jersey entities. Well, her case is factual analogous to your case where the physical presence is zero, but there's some sales-related transactions. What's your best case? What's the closest factual analog where we've ever upheld a jurisdiction? Can I save that for? Let me ask you another question about the email and the website. Which of the has the website? Enterprises sells the products. Enterprises advertises the So based on the website, but can you, I was a little confused by what I saw on the record in terms of this reply email. There's a website. The website doesn't sell the products, right? It's information, correct? The website provides information, by the way, on vets that have been certified and trained by the trust, even though the website is by the enterprises. Orders can be made by clicking links, email links. You can click on an email link and send an email to order a product. So you click on a link and you send an email and that, do you consummate a sale or do you just, what is the response on the email? What do you email for? You say I want to buy such and such and it's done. Well, it's available. I think the link is orders at sloganenterprises.com, something along those lines. So it's, it's set up to achieve that functionality. And what's the status of the other two actions that are cited in the briefs on the related cases? There's a reference to I think a DJ in Southern District of New York and another case in Northern District of California. Anything happen with those cases since the briefs were filed? Uh, New York, the New York case is pending. The California case is, stands dismissed currently. California case was an infringement case, right? And that was dismissed by the jurisdiction? No, that's, that was dismissed based on the fact that there was a conditional dismissal order. And so it stands dismissed without prejudice currently. And the Southern District of New York might as well. Do people kind of seem to, if this case tried, uh, they sued you and Argonne for that. And now you've gone after them in your home state, but they're not there. I would disagree. And it seems to me the real answer is if they've got a real claim against you that they are going to have you in your home state. The reverse of this case, which somehow I gather hasn't happened yet. No, that has not happened. Maybe it'll never happen. Can't disagree with you. Do you sell in every state? We sell in a lot of states. I don't think we sell in every state. Why don't you just lay back a little? Because, for example, the, I guess, your choice of the patent owner is the Northern District of California. That's not a very convenient jurisdiction for a small entity from New Jersey. All right, I want to say the rest of you, time for roll call. Yes, please. Thank you, sir. Ms. Pitchford? Thank you. Now, you're proceeding on the basis of the brief of the Coalish Cargill firm? That is correct, your honor. Our firm substituted in for Coalish in all of the various actions in that brief. You can't bring in something at this point that's not within the scope of the red brief. My firm is Chernoff, Dilhower, McClellan, and Stencil. We're a 15-lawyer firm in Portland, Oregon. All members of the patent firm are patent trademarks and copyrights. It's all we do. To quickly touch on Judge Crow's question about the status of the other litigations, just to reiterate that the D.J. action filed by New Generation Devices is still pending. The parties have submitted a joint scheduling order indicating that we jointly request that jurisdictional discovery be cut off by the end of the year and that the judge in that case hear Slocum's motion to dismiss for lack of personal jurisdiction in January or as soon as the court schedule allows. We have not heard back from the judge in that case about whether he's adopting our schedule or not. On the California case, prior counsel had with the consent of New Generation Devices contact the court indicating that they were jointly requesting a conditional dismissal to give parties time to wrap up settlement negotiations, which I will not get to here. Obviously, settlement has not been consummated, but that case was dismissed without prejudice. At this time, there are no patent infringement claims asserted by Slocum Enterprises or Slocum Trust against New Generation Devices, period. What are the major differences between the declaratory judgment action now before our panel and the one pending in the Southern District of New York in front of the trial? I believe the right hand is clearly on. What about the website? If you can click on the website, it's arguably information when you click it on, but there's a link and you press it and submit a purchase order. Why isn't that sufficient under the case law? If you look at the spectrum of interactivity that was outlined in the Zippo case between a highly interactive website, something of an Amazon.com basis, versus a billboard type of website, which is purely informational, ours does have a modicum of more interactivity than that. The enterprise's website does allow people to send emails or to click if they'd like to be contacted about new products, things of that nature. But also, does it allow us to purchase it? I mean, how is it different than Amazon? All you have to do is press one button and they will submit a purchase order. It does not allow purchasing. It has no place to enter credit card information or billing information or things of that nature. You need something more, a contact back from its local enterprises in order for a sale to go forward. What does the email accomplish? If I click on the email link and then I send an email saying I want to buy one of these things, is that a sale or what more has to happen? That is not a sale. That is an indication from a, hypothetically, New Jersey resident indicating that they would like to contact an Oregon corporation to purchase the product. What happens then? Then the Oregon corporation would contact them back and indicate, we've got products available, and ship those to their request. And my understanding is that's what happened here. It was not a mass mailing or national advertising. When I click on and I say, I like your product, I want to purchase five whatever, please tell me where to send the check and confirm the sale. Isn't that it? I mean, what more is done on the other end other than sending the products on the bill? That is largely all that happens except that the Slocum Enterprises outfit in Eugene, Oregon has to contact them back to consummate that sale. In other words, is that a binding contract at the time they click and say I'm interested in purchasing? I would submit that that was not addressed in the record below, but given the small size of the operation with three permanent employees, I would say if you changed your mind and decided you were no longer interested, they would say, okay, walk away. Where does the Zippo case draw the line with respect to online transactions? Well, the Zippo case doesn't actually draw the line. They indicated that it's more of a sliding scale. And so it requires the court to look at the quality and nature of the contacts. The Zippo case did give a breakdown of some of the other treatments by their jurisdictions. And this case most recently in Trimtech indicated that it had considered the Zippo case as well as the cyber cell case out of the Ninth Circuit. In the Trinet case, as you may recall, the court ultimately found there was not enough evidence in the record to analyze the website issue. What does the website have to do with the ruling below? The website was one of the factors that the court considered slogan enterprises and slogan trusts overall contacts with the forum states. But I thought that in the end, both the magistrate judge and the district judge in effect assumed that there was adequate purposeful availment because of the website and perhaps other factors, but then went on to rule it didn't matter because there was no overlap between the subject matter of the district's declaratory judgment action and the activities of either slogan enterprise. Well, I think in looking at the test that the court applied, both of those were considered. The court considered the factual contacts of slogan enterprises and trust and then also considered to what extent they were related to the claims asserted. Do you believe that the district judge relied on purposeful availment or assumed purposeful availment? I think the district court set up a hypothetical saying if there was purposeful availment, it still wasn't enough. You don't think that's assuming? That would be assuming. As opposed to holding that there was. District court considered a number of factors, owning property, paying taxes, maintaining offices, employees, coming to New Jersey to solicit sales, physical presence, registration. That's basically the ground for a decision. Yes, your honor. There were a few other factors in there also. I guess you have to ask whether in today's electronic world, some of those prior criteria can be substituted for by our electronic limitations. Well, I think Judge Mitchell mentioned earlier that the problem that a patentee faces if any contact with a form of state is adequate to invoke and exercise jurisdiction. In this case, it appears that slogan enterprises and trust were very careful to limit their contacts with New Jersey and indeed to keep their activities primarily in Oregon, where they have their offices, where they conduct themselves. You said they were very careful. They were very careful. I think they did it to one thing or another, probably because they didn't have the resources. They weren't a nationwide company. They wanted to establish those connections. I think that in part it's due to their size. They are a small entity, and so they have local counsel, and they primarily operate in a small venue. But if you look at the user licenses which were submitted in evidence, all of those indicate that they are governed by the laws of the state of Oregon, that the New Jersey veterinarians as well as veterinarians from other jurisdictions who signed them agreed to be bound by personal jurisdiction and venue into Oregon, which I think does show an intent to try and carefully manage how the patent may be interpreted to obtain consistent rulings. Does the intent of the patent holder have any relevance to the jurisdictional inquiry? Subjective intent, probably not, but the objective effect of that, I think it does, because it does touch on the purposeful availment criteria. This is an entity or two entities who were very careful about trying to maintain themselves in Oregon. You should think that the totality of the activities of the two should be considered together in your own group, because they're both defendants. That was an issue that was raised in the briefing below, and it appears that the analysis of the two was very closely linked, but there was not a specific argument made until the appellant's reply brief that there should be, that the court be required to consider both entities' activities together. Well, the Coit's analysis treated them separately, correct? Yes, it did. So if they're right, that they ought to have been treated together, don't we need to re-evaluate the facts here? I think even if you do consider them both together, you are still looking at a series of contexts that are very minimal to the fore. But do we know for sure whether the district court judge or the magistrate, what they would conclude if they combined the two, the acts of both entities? We don't know for certain yet, no. Let me ask you actually about that point. In the magistrate's order, at some point she says, it's at page 364, she says that the sum issue is a new argument raised only in the reply brief, so she's not going to consider it. Do you know whether she meant there the alter ego issue or the 19A issue of failure, the new ways of failure to join an indispensable party? I believe she means the alter ego issue. I'm not certain, again, I was not a part of that litigation, so I wasn't there for the oral argument, but I believe that it was the alter ego issue based on how the briefing reads. But she's talking to you all, and she says she's not going to consider the alter ego issue, but don't you read her opinion as finding that the two were separate? Yes, I do, Your Honor. And so she was rejecting the other side's argument that the two should not be considered separately? Counsel, put aside the peculiar circumstances of internet sales. Let's assume there was no internet involvement here at all. But there were repeated transactions between some number of veterinarians in New Jersey and two slope amenities in Oregon. As I recall, there were a hundred separate invoices transmitted from Oregon to these customers, licensees in New Jersey, veterinarians. Why is it so minimal if there are a hundred transactions, a hundred invoices? I'm sure they weren't for free. I mean, the company was charging these veterinarians for training and for licenses and for product to use in the surgery, a hundred transactions that all involve money. Why is that so minimal? Those hundred transactions were to entities who had signed the user license agreement, which indicated that they were going to be bound by Oregon personal and venue. Those transactions were at the request of New Jersey residents who were availing themselves, if you will, to an Oregon company, not vice versa. And those transactions amounted to less than one percent of Sloco Enterprises' overall sales during the period leading up to the filing of this lawsuit. So what? Is there some one percent rule out there in the case law that I don't know about? There is not a one percent rule, Your Honor, but it does indicate that this is minimum contacts. The question is whether it's sufficient minimum contacts. Well, for 50 states, if sales were all divided equally, then those states would be more than two percent of the population. At least .8 percent is not that different from two percent. It's not, Your Honor, but it is, nevertheless, a very small contact where the court has to decide, looking at the totality of the circumstances, is this sufficient minimum contacts? We would submit that it's not, that for an entity of this size who's tried very hard to maintain an Oregon presence- Well, why does the size of the Oregon Slocom Entities have any place in the analysis at all? It lends to the Burger King factors of the burden on the defendant to have to defend the litigation in foreign jurisdiction. Burger King went to fairness, not expense or inconvenience. There are other procedures for dealing with an inconvenience in the forum. This really has to do with constitutional limits on personal jurisdiction. I didn't understand that the size of the company was part of the analysis or the intent of the company. Do you think they are? I think that when the court looks at the context that a defendant has with foreign jurisdiction and has to decide whether these are sufficient minimum contacts and whether exercise of the court can be relevant. Clearly, they're not the only factors. Clearly, they're not the most important factors. The most important factors that have been set out by this court would indicate, though, that these are some entities that do not have the type of contacts that one would normally see. Time has expired. Thank you. Your Honor, with respect to general jurisdiction, the law is well settled that it's a question of whether the contacts are continuous and systematic. And we submit in this case, it's not just the sales, it's not just the percentage of sales, but it's all the other activities put together. And when you look at all the activities, you find that there is general jurisdiction. And those include the website and the license agreements and the sales. It includes training and certification, all related to New Jersey. Is there any specific evidence about how these seven veterinarians learned of the product and the method that they could obtain from the two Oregon entities? I'm sure that they find these in a number of different ways. For example, attending trade shows. I'm asking about specific evidence about seven particular veterinarians. Do we know how they came to even be aware that Slocum existed and had these things for sale? We do not know that. I think it's more like 11 or 14. Whatever the number of veterinarians. There's no record evidence of how they learned they could buy the stuff from Slocum. Unless people at Slocum was advertising activities. Well, you say must be, but maybe not. Maybe it's word of mouth. Maybe one veteran used to live in Oregon and he moved to New Jersey. He told his professional colleagues in New Jersey about the existence of the Slocum. If we had some proof that they were mailing flyers into New Jersey once a week for five years, then that might be very significant. As far as I'm aware, there's no proof at all how these veterinarians ever heard of Slocum. Right. Well, we do know about the website. That's right. We do know also that they send information into the licensed vets with invoices. So they send advertising information. Yeah, but those are already customers. I'm trying to figure out how one first becomes a customer. Yeah, I think it's the website and the trade shows. Do you agree with the opposing counsel that the facts in the Southern District, the Well, I think there is a difference. I think the cells are much greater. So to the extent that they're arguing that the sales are below some threshold, which I don't know. As to the relatedness issue, is there any difference? Is there any reason to expect a different result from the court in New York than from the court in Newark? It's possible that there was more activity directed at the New York forum than New Jersey jurisdictional discovery. Were you not involved in the New York action? Jurisdictional discovery hasn't occurred. It's in. Are you not involved? Yes, I am. Anything further? Again, I just point to the totality of these factors and that the website needs to be considered, not by itself, but as part of the contributing factors towards jurisdiction. All right. We thank both counsel. We'll take the appeal on your advisory. Thank you.